# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

ANDREW A. CEJAS,

              Plaintiff,

    vs.

W.K. MYERS, et al.,

              Defendants.

)  1:12cv00271 AWI DLB PC
)
)
)  FINDINGS AND RECOMMENDATIONS
)  REGARDING DEFENDANTS'
)  MOTION TO DISMISS AND MOTION FOR
)  MORE DEFINITE STATEMENT
)  (Document 23)
)
)  **THIRTY DAY OBJECTION DEADLINE**
)

        Plaintiff Andrew Cejas ("Plaintiff") is a prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 28 U.S.C. § 1983.  This action is proceeding on Plaintiff's Second Amended Complaint for violation of the First Amendment, Fourteenth Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") against Defendants Yates, Walker, Myers, McGee, Fisher, Trimble, Foston, Van Leer and Pimentel.

        On March 28, 2014, Defendants filed a motion to dismiss and motion for more definite statement.  Plaintiff filed his opposition on May 19, 2014.  Defendants filed their reply, along with evidentiary objections, on May 27, 2014.  Plaintiff responded to the evidentiary objections on June 10, 2014.  The motion is ready for decision pursuant to Local Rule 230(l).

## I.   **MOTION TO DISMISS**

### A.   Allegations in Second Amended Complaint

Plaintiff is incarcerated at the R.J. Donovan Correctional Facility.  The events at issue occurred while Plaintiff was incarcerated at Pleasant Valley State Prison ("PVSP").

Plaintiff alleges that section 3210, of Title 15 of the California Code of Regulations, requires an institution to make every reasonable effort to provide for the religious and spiritual welfare of all interested inmates, including affording inmates a reasonable accommodation to attend a scheduled religious service.

Plaintiff contends that he arrived at PVSP on August 23, 2007, and was housed in Facility D.  In 2008, he was moved to Facility A because of a points increase.

On August 26, 2009, Plaintiff submitted a group appeal because he was not allowed to attend Buddhist services for 30 days while on C-status.  The appeal was never answered.

Plaintiff also submitted an appeal in 2010 because he had not been getting his scheduled Buddhist service for years.  He alleges that the 'problem' started when Defendant Chaplain McGee took over and would not show up for scheduled Buddhist services.  Plaintiff alleges that Defendant McGee had his own opinions about Native Americans and Buddhists, and refused to show up for scheduled A Facility Buddhist services from 2009 to 2012.  As services are not permitted without a chaplain, Plaintiff went for years without having access to the chapel, causing interference with the practice of his religion.

On January 27, 2011, Defendants Myers and Fisher denied the appeal at the First Level, stating that if there is no state chaplain or religious volunteer, they can gather on the recreational yard.

On April 4, 2011, Defendants Trimble and Myers denied the appeal at the Second Level, stating that Plaintiff was allowed to participate in Buddhist services and that there is a staff member designated to assist Buddhist members.

2

On July 19, 2011, Defendants Van Leer and Foston denied the appeal at the Director's Level, finding that PVSP provided Plaintiff with a thorough response.

On August 9, 2011, Plaintiff submitted a group appeal because he was on C-status again, and for these 120 days, he was denied the right to attend Buddhist services.  Plaintiff contends that other religions were allowed to attend religious services while on C-status.  He states that Defendant Walker allowed C-status Muslims to attend services and allowed C-status Jewish inmates to attend a holiday service.  He also alleges that Defendants continue to allow relatively unsupervised access to the chapel to other inmates.

Defendant Trimble denied the appeal at the Second Level, explaining that Plaintiff was permitted to worship during his allotted program time based on his work group/privilege designation.

On December 29, 2011, Defendant Pimentel and Foston denied the appeal at the Third Level of Review by citing section 3201(a), of Title 15 of the California Code of Regulations. Plaintiff contends that Defendants Fisher, Trimble, Foston, Van Leer and Pimentel knew of the violations and were in a position to correct them, but failed to do so.

Plaintiff alleges that Defendant Yates created and enforced the policy that prohibits C-status prisoners from attending religious services.  Plaintiff states that Defendant Yates revised PVSP operations procedure number 107 in October 2009.  The change addressed program modification when there is insufficient staff to fill all vacancies and directed that religious services shall continue as scheduled whenever medical, mental health and dental services are provided as scheduled.  Contrary to OP 107, Facility A is denied chapel access while on modified program.  Defendant Walker enforces the policy on A yard.  He believes that an assertion of "security concern" is insufficient to prohibit C status prisoners from attending religious services.

Plaintiff contends that Defendant Myers oversees all religious programs and approves chapel schedules.  She also reviewed Plaintiff's appeal but did not correct the issues.

Based on these allegations, Plaintiff alleges violations of the First and Fourteenth Amendments and RLUIPA.

B.    Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)) (quotation marks omitted); Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011); Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The Court must accept the well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party.  Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Huynh v. Chase Manhattan Bank, 465 F.3d 992, 996-97 (9th Cir. 2006); Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000).  Further, although the pleading standard is now higher, the Ninth Circuit has continued to emphasize that prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor.  Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. May 25, 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).

C.    Analysis

1.    RLUIPA

Defendants contend that Plaintiff's RLUIPA claim must be dismissed because he cannot state a RLUIPA claim for damages against state officials in their individual capacities.  As Plaintiff's requests for injunctive relief against Defendants in their official capacities were

dismissed pursuant to the January 2, 2014, screening order, Defendants argue that the Court no longer has jurisdiction over the claim.

Defendants are correct that this Court dismissed Plaintiff's request for injunctive relief because Plaintiff was no longer at the institution where the events complained of occurred.  ECF No. 17, at 6.  Moreover, pursuant to the Eleventh Amendment, Plaintiff cannot sue Defendants for damages in their official capacity.  Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted).

Therefore, this leaves Plaintiff's RLUIPA claim proceeding as a claim for damages against Defendants in their individual capacity.  Subsequent to the parties' briefing, the Ninth Circuit definitively held that a RLUIPA claim may not be maintained against prison officials in their individual capacities.  Wood v. Yordy, 753 F.3d 899 (9th Cir. 2014).

Accordingly, based on Wood v. Yordy, the Court recommends that Plaintiff's RLUIPA claim be dismissed without leave to amend.

> 2.  *Claims Against Defendants in Their Official Capacities*

Defendants next argue the remainder of Plaintiff's claims cannot proceed against Defendants in their official capacities.  Defendants are correct.

As noted above, Plaintiff's claims for injunctive relief have been dismissed and money damages are all that remain of his requested relief.  "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities."  Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted).  However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities.  Hafer v. Melo, 502 U.S. 21, 30 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003).

In his opposition, Plaintiff contends that the Court should "reconsider" the dismissal of his request for injunctive relief, and argues that his request is not moot because he "is a lifer, and

can be transferred back to PVSP in the future." ECF No. 30, at 31. However, granting

injunctive relief in such a situation would be based on pure speculation. Where a plaintiff is no

longer incarcerated at the prison, yet seeks relief concerning that prison, a plaintiff cannot show

that he is under threat of suffering a concrete and particularized injury. Moreover, the threat

must be actual and imminent, not conjectural or hypothetical. <u>Summers v. Earth Island Institute</u>,

555 U.S. 488, 493 (2009).

Though Plaintiff may disagree with the concept of standing, the fact remains that he does

not have standing to remedy alleged violations where he is no longer subject to the violations.

That he might be returned to PVSP, at some future date, does not change the standing

requirement. When an inmate seeks injunctive concerning the prison where he is incarcerated,

his claims for such relief become moot when he is no longer subjected to those conditions.

<u>Alvarez v. Hill</u>, 667 F.3d 1061, 1063-64 (9th Cir. 2012); <u>Nelson v. Heiss</u>, 271 F.3d 891, 897 (9th

Cir. 2001).

Plaintiff's argument that an exception exists to the mootness doctrine because the

violations are "capable of repetition," is without merit. ECF No. 30, at 31. Plaintiff's claims are

not ones that are "too short in duration to be fully litigated prior" to their expiration, nor has

Plaintiff demonstrated a reasonable expectation that he will be transferred back to PVSP. <u>Dilley</u>

<u>v. Gunn</u>, 64 F.3d 1365, 1368 (9th Cir. 1995).

Therefore, the Court recommends that Plaintiff's claims against Defendants in their

official capacities be dismissed without leave to amend.

### 3.   *Violation of the First Amendment*

Defendants argue that Plaintiff's allegations fail to state a claim under the First

Amendment because (1) his claims are belied by the policy he cites; (2) he makes no allegation

that chapel time is mandated by his faith; and (3) there was a legitimate penological interest

related to supervision of C-status inmates.

As to the fact that the policy at issue appears to provide for Buddhist chapel time for C-status inmates, Plaintiff contends that despite this policy, Defendants did not provide him with chapel access on the allotted days.  Given Plaintiff's allegations, Defendants cannot rely on the facial validity of the policy at issue to defeat his claim at the screening stage.

Second, Defendants' argument that Plaintiff must allege that chapel time is *mandated* by his faith is an incorrect statement of law.  In <u>Freeman v. Arapaio</u>, 125 F.3d 732, 736 (9th Cir. 1997), cited by Defendants, the Ninth Circuit held that a plaintiff must show that the defendant substantially burdened "conduct mandated by his faith. . ."  However, in <u>Shakur v. Schriro</u>, 514 F.3d 878, 884-885 (9th Cir. 2008), the Ninth Circuit rejected this objective approach and instead adopted the "sincerity test."  Under current law, then, prisoners are not required to "objectively show that a central tenet of [their] faith is burdened" in order to raise a viable free exercise claim. <u>Id.</u> at 884.  Rather, the belief must be both "'sincerely held'" and "'rooted in religious belief.'" <u>Id.</u> (citing to and quoting <u>Malik v. Brown</u>, 16 F.3d 330, 333 (9th Cir. 1994) (quoting <u>Callahan v. Woods</u>, 658 F.2d 679, 683 (9th Cir. 1981))).

Nonetheless, Plaintiff's Second Amended Complaint falls just short of meeting this requirement.  He alleges that the denial of indoor chapel space for group meditation substantially burdened the practice of his religion.  Plaintiff explains that the performance of group meditation and/or prayer requires participants to close their eyes.  Because Buddhists with closed eyes would be subject to danger and attacks on the yard, Plaintiff contends that an indoor area is necessary.[1]  Elsewhere, Plaintiff refers to his First Amendment right "to mediate and chant in the chapel to his Buddhist beliefs."  ECF No. 16, at 21.

In his opposition, Plaintiff specifically states that his Buddhist faith "requires meditation, chanting and prostration, which are held indoors."  ECF No. 30, at 37.  However, allegations in Plaintiff's opposition cannot cure deficiencies in the complaint.

---

[1]  These allegations are set forth under Plaintiff's RLUIPA claim, which the Court has recommended be dismissed. ECF No. 16, at 19.

Finally, Defendants argue that there is a legitimate penological interest in prohibiting C-status prisoners from attending chapel unsupervised.  Such a determination, however, requires a fact-finding analysis that goes beyond that permitted by a motion to dismiss.

Therefore, the Court finds that Plaintiff has failed to state a claim under the First Amendment because he has not clearly alleged that chapel access is necessary for a "sincerely held" belief that is "rooted in religious belief."  Shakur, 514 F.3d at 884.  The Court recommends that Defendants' motion to dismiss be granted as to this claim, but that Plaintiff be permitted to amend.

4.    *Equal Protection*

Next, Defendants argue that Plaintiff has failed to state an Equal Protection claim because he fails to allege that any Defendants discriminated against him because of his Buddhist faith.  To the extent that Plaintiff alleges that Defendant McGee "had his own opinions regarding Native American[s] and Buddhists and refuse[d] to show up for Buddhist scheduled services on "A" Facility," Defendants argue that this is nothing more than speculation.  ECF No. 16, 122.

To state a claim under the Equal Protection Clause, a plaintiff must allege facts sufficient to support the claim that prison officials intentionally discriminated against him on the basis of his religion by failing to provide him a reasonable opportunity to pursue his faith compared to other similarly situated religious groups.  Cruz, 405 U.S. at 321-22; Shakur, 514 F.3d at 891.  Even where a policy is facially neutral, a plaintiff must allege facts demonstrating that defendant acted with a discriminatory purpose when enacting the policy, resulting in a disproportionate impact.  See Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001).

In his Second Amended Complaint, Plaintiff alleges that despite the policy appearing to apply to all faiths, faiths other than Buddhists were permitted unsupervised chapel access.  For example, Muslim inmates were permitted to attend chapel without supervision.  ECF No. 16, at 24.  He further contends that Buddhist inmates were treated differently "from other [religious]

Groups in prison who were similarly situated."  He contends that this unequal treatment "resulted [from] intentional and purposeful discrimination against the Buddhist faith."  ECF No. 16, at 24.

The Court agrees that Plaintiff's suggestion that Defendant McGee did not show up to chapel time because he "had his own opinions" about Native Americans and Buddhists is not sufficient to state a claim against Defendant McGee.  The Court recommends that the motion to dismiss as to Defendant McGee be granted, but that Plaintiff be permitted to amend.

As to Plaintiff's remaining general allegations, Plaintiff's equal protection claim revolves around his observation that Muslim and Jewish prisoners were permitted to have unsupervised chapel access, while Buddhist prisoners were not.  Although he contends that this was intentional, he does not specifically set forth facts to explain his legal conclusion.  He also fails to link any Defendant with alleged discriminatory behavior.

In his opposition, Plaintiff restates this argument, but also cites memorandums in support of his argument.  However, Plaintiff's exhibits are documents that go beyond the face of Plaintiff's Second Amended Complaint and are not properly considered on a motion to dismiss.  "'The focus of any Rule 12(b)(6) dismissal . . . is the complaint.'"  U.S. v. Corinthian Colleges, 655 F.3d 984, 991 (9th Cir. 2011) (citing Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).[2]  Plaintiff also submits his declaration as Exhibit C, but Plaintiff's conversations with other inmates constitutes inadmissible hearsay.

Accordingly, the Court recommends that Defendants' motion to dismiss the equal protection claim be granted, but that Plaintiff be permitted to amend this claim.

---

[2]    Plaintiff believes that the documents are proper because (1) Federal Rule of Civil Procedure 15(a) permits him to amend or supplement the complaint; and/or (2) the documents relate to conduct complained of.  Plaintiff is incorrect, however.  Rule 15 has no bearing where a motion to dismiss for failure to state a claim is pending and the Court is constrained in the materials it may review.  Moreover, while the Court may consider documents subject to judicial notice and incorporated by reference, neither exception is applicable here.

5.    *Claims Based on Inmate Appeal Review*

Defendants Myers, Fisher, Foston, Van Leer, Trimble and Pimentel argue that the claims against them should be dismissed insofar as the claims are based on their review of Plaintiff's inmate grievances.

Defendants are correct that there is no free-standing constitutional right to the grievance procedure, and that liability cannot generally be based on denying an appeal.  George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (quotation marks omitted).  However, Defendants fail to acknowledge that there are limited circumstances under which an official who reviews an appeal can be held liable for the underlying constitutional violation.  Such liability is based not on the act of reviewing the appeal, but rather is based on a theory of supervisory liability.  The act of reviewing the appeal is the method through which the official is notified of the alleged violations.  Where the official fails to correct the violation, supervisory liability exists.

A prison official in a supervisory position may be held liable under section 1983 where there is personal involvement, or "a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation."  Lemire v. CDCR, 726 F.3d 1062, 1074-1075 (9th Cir. 2013) (citing Lolli v. Cnty. of Orange, 351 F.3d 410, 418 (9th Cir.2003)).  Among other situations, this causal connection can include a supervisor's "acquiescence in the constitutional deprivation of which a complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others."  Id. at 1075 (citing Cunningham v. Gates, 229 F.3d 1271, 1292 (9th Cir.2000).

In his Second Amended Complaint, Plaintiff alleges that Defendants Fisher, Trimble, Foster, Van Leer and Myers are aware of constitutional violations through the inmate appeals process and are in positions to correct the alleged violations.  ECF No. 16, at 11-12.  He alleges that all Defendants "knew of the described deprivation of rights secured by the Constitution and federal law when they answered plaintiff's appeals. . ."  ECF No. 16, at 13.  Defendant Myers,

10

Fisher, Trimble, Van Leer and Foston denied Plaintiff's appeal regarding denial of chapel access at various levels.  Defendants Trimble, Pimentel and Foston denied Plaintiff's appeal relating to C-status policy of not allowing group religious services.  According to Plaintiff's allegations, then, the grievance procedure is the method by which the Defendants were notified of the alleged constitutional violations, which they allegedly failed to remedy.

As noted in the screening order, the Court found these allegations sufficient to state a claim against Defendants Fisher, Trimble, Foster , Van Leer and Myers.  However, as the Court has recommended that Plaintiff's First Amendment and RLUIPA be dismissed with leave to amend, the claims against Defendants based on their involvement in the appeals process fail unless and until Plaintiff can successfully amend his underlying claims.

6.    *Qualified Immunity*

Defendants Yates, Trimble, Meyers, Walker and Fisher argue that they are entitled to qualified immunity as policy makers.  Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).  "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).  "[T]he qualified immunity inquiry is separate from the constitutional inquiry" and "has a further dimension." Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049-50 (9th Cir. 2002) (citing Saucier v. Katz, 533 U.S. 194, 205, 121 S.Ct. 2151 (2001)) (internal quotation marks omitted).  "The concern of the immunity inquiry is to acknowledge that

reasonable mistakes can be made. . . ." <u>Estate of Ford</u>, 301 F.3d at 1049 (citing <u>Saucier</u> at 205) (internal quotation marks omitted).

In resolving a claim of qualified immunity, courts must determine whether, taken in the light most favorable to the plaintiff, the defendant's conduct violated a constitutional right, and if so, whether the right was clearly established. <u>Saucier</u>, 533 U.S. at 201; <u>Mueller v. Auker</u>, 576 F.3d 979, 993 (9th Cir. 2009). While often beneficial to address in that order, courts have discretion to address the two-step inquiry in the order they deem most suitable under the circumstances. <u>Pearson</u>, 555 U.S. at 236, 129 S.Ct. at 818 (overruling holding in <u>Saucier</u> that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); <u>Mueller</u>, 576 F.3d at 993-94.

A qualified immunity defense is generally not amenable to dismissal under Rule 12(b)(6) because facts necessary to establish this affirmative defense generally must be shown by matters outside the complaint. <u>See Morley v. Walker</u>, 175 F.3d 756, 761 (9th Cir.1999). A dismissal on grounds of qualified immunity on a Rule 12(b)(6) motion is not appropriate unless it can be determined "based on the complaint itself, that qualified immunity applies." <u>Groten v. California</u>, 251 F.3d 844, 851 (9th Cir.2001); <u>Rupe v. Cate</u>, 688 F.Supp.2d 1035, 1050 (E.D.Cal.2010) (denial of qualified immunity because could not be clearly determined on the face of complaint but stated the ground could be raised by way of motion for summary judgment).

Where liability is based solely on the promulgation and enforcement of a policy, qualified immunity is proper unless the policy "is so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." <u>Jeffers v. Gomez</u>, 267 F.3d 895, 914 (9th Cir. 2001). Here, Defendants argue that the only policies identified by Plaintiff, Operating Procedure 107 and DOM Supplement §§ 101060.1-101060.11, are not so fundamentally flawed so as to repudiate Plaintiff's constitutional rights. As to Defendants Yates and Walker, where their only involvement was writing and enforcing the policies, Defendants

are correct and the Court recommends that Defendants Yates and Walker be granted qualified immunity.[3]

Plaintiff attempts to avoid this result by arguing, in his opposition, that Defendants failed to follow their own policies.  However, Plaintiff's complaint very clearly alleges that Defendants Yates and Walker created an unconstitutional policy related to C-status prisoners.

As to Defendants Trimble, Meyers and Fisher, however, their alleged involvement goes beyond creating and enforcing policies.  Plaintiff placed each on notice, though his appeals, that his constitutional rights were being violated and they did not act to prevent further violations.  Accordingly, at the pleading stage, the Court recommends that qualified immunity as to Defendants Trimble, Meyers and Fisher be denied.

7.     *Allegations Relating to Failure to Provide Buddhist Chaplain*

Defendants contend that Plaintiff's allegation that Defendants failed to fill a vacant chaplain position does not state a claim.  In support of their claim, however, Defendants cite case law holding that an inmate does not have a constitutional right to a chaplain of a *specific* faith.  Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972).

Plaintiff does not allege that Defendants failed to fill a vacant chaplain position with a Buddhist chaplain.  Rather, Plaintiff alleges that the failure to fill a long-vacant chaplain position "needed to function adequately" did not further a penological interest.  ECF No. 16, at 22-23.  As pled, it is a legal conclusion that is part of Plaintiff's First Amendment claim.  Therefore, there is no basis to find that Plaintiff fails to state a claim based on this statement because it is an immaterial legal conclusion, not a factual statement.

---

[3] Defendants Yates and Walker will be entitled to qualified immunity even if Plaintiff amends his complaint. Regardless of any amendments necessary to correct the deficiencies identified herein, the fact remains that their only role was writing and enforcing a facially valid policy.

## II.   MOTION FOR MORE DEFINITE STATEMENT

Finally, Defendants request that if any amendment is allowed, that Plaintiff be ordered to comply with Rule 8.

A Rule 12(e) motion for a more definite statement is proper when the pleading at issue "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e).  A motion for a more definite statement must be considered in light of the liberal pleading standards of Rule 8(a) (a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief.").

The Court recommends that Defendants' request be denied as moot given Plaintiff's leave to amend.  The Court will set forth specific and detailed rules for amending below.

## III.   AMENDMENT[4]

Plaintiff's amendment may only address the deficiencies identified by these Findings and Recommendations.  Plaintiff may not add claims or change the nature of his claims.

In amending, Plaintiff must amend to address the following issues:

1.      This is not a class action, and Plaintiff shall not include any reference to other plaintiffs;

2.      Plaintiff does not state a claim under RLUIPA does not state a claim and it should not be included;

3.      Defendants Yates and Walker have been dismissed and should not be included;

4.      Plaintiff is permitted to amend only the First Amendment Claim and Equal Protection Claim.  In amending the First Amendment Claim, Plaintiff must allege facts to demonstrate that Defendants substantially burdened a sincerely held belief rooted in his religious belief.  In amending his Equal Protection Claim, Plaintiff must allege facts to demonstrate that Defendants discriminated against him because of his religion.  Legal conclusions do not suffice;

---

[4] An amendment will not be permitted unless and until these Findings and Recommendations are adopted.

5.      Plaintiff's amendment should be more specific as to what time periods and policies he contends are at issue; and

6.      Plaintiff must link each named Defendant with an alleged constitutional violation. <u>Plaintiff should only amend if he can do so in good faith.</u>

## IV.      <u>CONCLUSION AND RECOMMENDATIONS</u>

Based on the foregoing, it is HEREBY RECOMMENDED that Defendants' motion to dismiss and motion for a more definite statement be GRANTED IN PART and DENIED IN PART, as discussed above.  Specifically, the Court RECOMMENDS:

1.      Plaintiff's RLUIPA claim be DISMISSED WITHOUT LEAVE TO AMEND;

2.      Plaintiff's claims against Defendants in their official capacity be DISMISSED WITHOUT LEAVE TO AMEND;

3.      Defendants Yates and Walker be entitled to qualified immunity and DISMISSED FROM THIS ACTION;

4.      Plaintiff's First Amendment claim and Equal Protection Claim be DISMISSED WITH LEAVE TO AMEND; and

5.      Plaintiff be permitted to file an amended complaint, in accordance with the above directives, within thirty (30) days of the date of service of the order adopting these Findings and Recommendations.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's

objections.  The parties are advised that failure to file objections within the specified time may

waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th

Cir. 1991).

IT IS SO ORDERED.

    Dated:   **September 10, 2014**               /s/ *Dennis L. Beck*

                                                UNITED STATES MAGISTRATE JUDGE