# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW A. CEJAS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MYERS, et al.,<br><br>　　　　Defendants. | Case No. 1:12-cv-00271-AWI-DLB PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS FOSTON, VAN LEER AND PIMENTEL<br><br>(Document 135) |

Plaintiff Andrew A. Cejas ("Plaintiff") is a California state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's Third Amended Complaint for violation of his First Amendment right to practice his religion.

On January 11, 2016, Defendants Foston, Van Leer and Pimentel filed the instant motion for summary judgment.[1] Plaintiff filed various documents opposing the motion, filing a main opposition on February 22, 2016. Defendants filed their reply on March 4, 2016. Plaintiff filed a sur-reply and objections to evidence on March 23 and 24, 2016. On April 7, 2016, Defendants responded to Plaintiff's evidentiary objections. The motion is ready for decision pursuant to Local Rule 230(l).[2]

---

[1] The remaining Defendants are represented by separate counsel and filed their own motion for summary judgment. By separate Findings and Recommendations, the Court recommended that the motion be granted.

[2] Defendants provided the requisite notice required by *Rand v. Rowland*, 152 F.3d 952, 961-963 (9th Cir. 1998).

1

## I.     LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Washington Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp.*, 627 F.3d at 387 (citing *Celotex Corp.*, 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, *Soremekun v. Thrifty PayLess, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), *cert. denied*, 132 S.Ct. 1566 (2012). The Court determines only whether there is a genuine issue for trial, and Plaintiff's

1 filings must be liberally construed because he is a pro se prisoner. *Thomas v. Ponder,* 611 F.3d
2 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

## II. SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff is incarcerated at the R.J. Donovan Correctional Facility. The events at issue occurred while Plaintiff was incarcerated at Pleasant Valley State Prison ("PVSP").

Plaintiff explains that he is a sincere practitioner of the Buddhist faith, which requires meditation, chanting and prostration in an indoor space. Prisoners use the chapel space as a "monastery," where they can learn meditation techniques from more advanced prisoners or volunteers. Plaintiff contends that the denial of chapel access from 2009 through 2012 has burdened the practice of his religious faith.

Plaintiff alleges that as of June 2008, PVSP Department Operations Manual ("DOM") Supplement section 101060 required that master chapel schedules be made to accommodate each religious group. Defendant Myers is responsible for preparing the monthly schedules. Buddhists are afforded chapel time on Mondays and Tuesdays from 1:00 p.m. to 4:00 p.m.

In 2009, Plaintiff was on C-Status for 30 days. Defendants Myers, Fisher, Trimble and McGee were responsible for placing restrictions on C-Status prisoners, and Plaintiff was not allowed to attend Buddhist services during this time.

On December 20, 2010, Plaintiff filed a group appeal regarding the years of denial of chapel access caused by Defendant McGee not arriving for scheduled services. He contends that Defendant McGee intentionally failed to provide chapel access from 2009 through 2012, which prohibited him from practicing his Buddhist faith.

On January 27, 2011, Defendants Myers and Trimble denied the appeal at the First Level, stating that if there is no state chaplain or religious volunteer, inmates can gather on the recreational yard. Plaintiff explains that this is insufficient because of the risks of Valley Fever, as well as dangers faced on the yard when an inmate's eyes are closed.

On April 4, 2011, Defendants Trimble and Myers denied the appeal at the Second Level, stating that Plaintiff was allowed to participate in Buddhist services and that there is a staff member designated to assist Buddhist members.

Defendant Trimble revised section 101060.8 on April 29, 2011, though it still required custody staff to supervise chapel access in the absence of a chaplain or religious volunteer.

On July 19, 2011, Defendants Van Leer and Foston denied the appeal at the Director's Level, stating that PVSP provided Plaintiff with a thorough response.

On August 9, 2011, Plaintiff submitted a group appeal because he was on C-Status again, and was not allowed to attend group religious services.

Defendant Trimble denied the appeal at the Second Level, explaining that Plaintiff was permitted to worship during his allotted program time based on his work group/privilege designation.

On December 29, 2011, Defendants Pimentel and Foston denied the appeal at the Third Level.

### III.   UNDISPUTED MATERIAL FACTS[3]

Plaintiff arrived at PVSP in 2007. Pl.'s Dep. 54:16-18 (attached as Ex. B to Mot. Summ. J.).

Plaintiff is a practicing Buddhist. His daily rituals consist of meditation twice a day, morning and night, which he performs in his cell a lot of times. He also recites mantras once a week and chants approximately once a month. Plaintiff chants inside his cell, but he prefers to chant outside the cell in the chapel. Pl.'s Dep. 32:8-34:24. There is a "group" component to Plaintiff's practice, which includes group meditation and chanting in the chapel every week, when available. Pl.'s Decl. ¶ 1 (ECF No. 155, at 10). The allegations in the First Amended Complaint are related to his group practice. Pl.'s Decl. ¶ 4.

Buddhist inmates at PVSP Facility A were scheduled to access the prison chapel twice per week, from 1:00 p.m. to 4:00 p.m. on Mondays and Tuesdays. Pl.'s Dep. 59:6-60:4. Plaintiff contends that he was denied access to the prison chapel because PVSP personnel did not always show up to open the chapel during scheduled times. Pl.'s Dep. 16:19-23, 78:7-13; 81:22-82:4.

---

[3] Plaintiff filed his own separate statement of disputed facts, though he did not specifically admit or deny the facts set forth by Defendants as undisputed. Local Rule 56-260(b). Therefore, Defendants' statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified amended complaint or Plaintiff's declaration in support of his disputed facts. ECF No. 155, at 10-14. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence).

1    During chapel times, Plaintiff would meditate and chant.  When the chapel was not available, Plaintiff would meditate and chant in his cell or on the yard.  There was nothing that he could do in the chapel that he could not do on the yard.  Plaintiff did the same meditations and chants whether he was in the chapel or on the yard.  Pl.'s Dep. 45:20-25, 61:4-62:9.

There were times between 2009 and 2012 that Plaintiff did not have access to the chapel because Chaplain McGee did not arrive to supervise chapel time.  Pl.'s Decl. ¶ 2.  At his deposition, Plaintiff could not provide dates on which he was denied access, or state how many times prison staff did not show up to open the chapel during scheduled times.[4]  Pl.'s Dep. 47:24-48:12.

Plaintiff also alleges that he was denied access to the chapel when he was on C-Status, which is a prison status for prisoners with more than two prison rules violations in six months.  Pl.'s Dep. 14:8-12.  While on C-Status, Plaintiff was permitted out of his cell for approximately one hour per day, Monday through Friday, from 7:00 a.m. to 8:00 a.m.  Pl.'s Dep. 15:5-16: 2.  He did not have access to the chapel during this time.  Pl.'s Decl. ¶ 2.  Plaintiff was on C-Status for thirty days in 2009, and for six months in 2011.  Pl.'s Dep. 56:14-57:9.  He was released from C-Status on November 24, 2011.  Pl.'s CDCR 128G (attached as Ex. F to Mot. Summ. J.).

While on C-Status, Plaintiff did not place any requests to have a religious advisor provide a consultation.[5]  Pl.'s Dep. 42:6-43:11.

The California Department of Corrections and Rehabilitation ("CDCR") Office of Appeals ("OOA"), located in Sacramento, California, processes inmate appeals at the Third and final level of the administrative appeals process.  Under the direction of the OOA Chief and/or Assistant Chief, the OOA Appeals Examiners review inmate appeals, conduct investigations and prepare Third Level decisions.  Duties include reviewing the appeal file documentation and requesting additional documentation as necessary to render a decision.  The Appeals Examiner submits a recommended Third Level decision for approval and signature by the OOA Chief or other authorized OOA

---

[4] Plaintiff states that during the deposition, he "was never asked for years of injury." Pl.'s Dep. ¶ 15. He was asked, however, to provide the dates on which he did not have access. In any event, it is undisputed that there were times that Plaintiff did not have access, and in the context of the claim against these appeal-reviewer Defendants, the number of times Plaintiff did not have access is not relevant.

[5] Plaintiff states that he did not put in a request because there were no Buddhist advisors. Pl.'s Decl. ¶ 9. This does not dispute the original fact, however, that he did not make any such requests.

designee. Foston Decl. ¶¶ 1-3, 7 (attached as Ex. E. to Mot. Summ. J.); Van Leer Decl. ¶ 2; Pimentel Decl. ¶ 2 (attached as Ex. D to Mot. Summ. J.).

Defendants Pimentel and Van Leer were Appeals Examiners for the OOA. They examined inmate appeals to determine whether prison officials complied with the California Penal Code, Title 15 of the California Code of Regulations, the CDCR DOM, CDCR local procedures and CDCR instructional memoranda.[6]

If an Appeals Examiner determined that the institution failed to comply with Title 15, he or she would recommend that a modification order be issued to the institution to bring it into compliance. After a modification order was prepared, the OOA Chief, or other Appeals Examiner with delegated authority to review it, either approved, disapproved or amended the modification order before it was sent to the institution. Although the Appeals Examiner could recommend that a modification order be issued, OOA Appeals Examiners had no authority to enforce the orders. Foston Decl. ¶¶ 5-6; Van Leer Decl. ¶ 4; Pimentel Decl. ¶ 4.

*Appeal Related to Weekly Chapel Access*

Defendant Van Leer reviewed the documentation provided with Plaintiff's appeal related to weekly chapel access. Plaintiff's appeal requested one of the following options as relief: that Buddhist inmates be permitted to access the chapel without supervision, that a custody officer be provided for services, or that Buddhist inmates be allowed to use the outdoor-nature based grounds.[7] Van Leer Decl. ¶ 6.

In the First Level appeal response, Plaintiff was advised that a state chaplain or religious volunteer must be present for inmates to gather at the chapel. He was further advised that if no chaplain or volunteer was available, the least restrictive alternative was for inmates to gather on the yard for approved religious functions. The appeal was partially granted at the First Level. Van Leer Decl. ¶ 6.

---

[6] Plaintiff contends that Defendants were responsible for ensuring compliance with the Religious Land Use and Institutionalized Persons Act and the First Amendment. He lacks personal knowledge to make such a statement, however. Plaintiff also cites California Penal Code section 5009, which sets forth the religious liberties of inmates. The section does not speak to Defendants' duties or responsibilities.

[7] Plaintiff attempts to dispute this fact by explaining why he requested use of the outdoor space. His reasoning does not dispute the fact, however, and it is not relevant in the context of his claims against these Defendants.

6

At the Second Level of review, Appeals Coordinator Foreman provided Plaintiff with a copy of the PVSP Chapel Schedule, which provided for Buddhist chapel times of Monday from 1:00 p.m. to 4:30 p.m., and Tuesday from 12:30 p.m. to 2:00 p.m.  Mr. Foreman also told Plaintiff that inmates could gather on the yard in the event the chapel was not available.  Finally, Mr. Foreman noted that Plaintiff's appeal was vague, and he had not provided any evidence to support his claim that PVSP was denying his ability to practice his religion, i.e., dates on which he was denied access.  Mr. Foreman cited DOM Supplement Section 101060.1, which regulated chapel access.  Van Leer Decl. ¶ 7.

Based on his review of Plaintiff's appeal, Defendant Van Leer determined that the actions of PVSP appeared to have complied with the applicable provisions.  Defendant Van Leer prepared a Third Level decision dated July 19, 2011, advising Plaintiff that he failed to provide any compelling supporting evidence to support his allegations.[8]  He further advised Plaintiff that the chapel would be open only when a chaplain or volunteer could be present, and that Plaintiff was permitted to practice on the prison yard if staff could not open the prison chapel.[9]  Defendant Van Leer based his decision on Title 15 of the California Code of Regulations, sections 3000, 3001, 3084.1, 3084.2, 3210, 3270, as well as PSVP DOM Supplement 101060.1.  Van Leer Decl. ¶¶ 5-8.

*Appeal Related to Chapel Access while on C-Status*

Plaintiff submitted an inmate appeal related to his chapel access while on C-Status. Defendant Pimentel issued a Third Level decision on December 29, 2011.  Plaintiff's requested relief included a request that PVSP rescind its policy and allow C-Status inmates to attend the scheduled chapel times each week.  Pimentel Decl. ¶¶ 5-6.

According to the documentation, the appeal was bypassed at the First Level.  At the Second Level, PVSP Appeals Coordinator Foreman interviewed Plaintiff on August 24, 2011.  Plaintiff indicated that he had nothing to add.  As explained in the Second Level response, DOM Supplement

---

[8] Plaintiff states that he was never asked for specific days, though this does not dispute the initial fact that he did not provide specific dates.  Pl.'s Decl. ¶ 8.

[9] Plaintiff attempts to dispute this fact by stating that from 2009-2012, Muslim and Jewish inmates were permitted to attend group chapel services unsupervised, when a chaplain was not available.  Pl.'s Decl. ¶ 5.  Plaintiff's cited evidence, however, does not support this statement.  In any event, Plaintiff's assertion does not place Defendant Van Leer's response in dispute, and, in the context of the claims against the appeal-reviewer Defendants, the assertion is not relevant.

1  Section 101060.9.1 indicates that inmates on C-Status are not authorized to attend religious
2  functions except during their yard access hours, Monday through Friday.[10]  Defendant Pimentel
3  noted that the Second Level response also advised Plaintiff that "inmates interested in receiving
4  religious consultations at other than authorized program times shall submit a request to their
5  appropriate religious leader."  Pimentel Decl. ¶¶ 7-8.

6  Based on Defendant Pimentel's review, he confirmed that the actions of PVSP appeared to
7  comply with Title 15, the DOM and other CDCR rules and regulations.  He prepared a Third Level
8  decision in which he advised Plaintiff that the institution documented that he may attend services,
9  but due to his C-Status, his access to programs was limited due to his failure to comply with CDCR
10 regulations.  Defendant Pimentel also indicated that C-Status is a means to encourage good behavior,
11 and is intended to be temporary.  Defendant Pimentel also noted that Plaintiff should contact his
12 religious advisor to request services, as stated in the Second Level response.  The decision was based
13 on Penal Code section 5058, and Title 15 of the California Code of Regulations, sections 3000,
14 3001, 3004, 3005, 3040, 3041, 3044, 3210, 3211, 3270 and 3380.  Defendant Pimentel determined
15 that no changes or modifications by PVSP were warranted and denied the appeal.  Pimentel Decl. ¶¶
16 7-8.

17 *Defendant Foston*

18 Defendant Foston was the Chief of the CDCR OOA from January 2010 through April 2012.
19 He did not read, review or respond to either of Plaintiff's appeals referenced above.  Pursuant to
20 Title 15 of the California Code of Regulations, other authorized OOA personnel signed those Third
21 Level decisions on behalf of the Chief.[11]  Defendant Foston was not aware of Plaintiff's appeals and
22 had no involvement or knowledge of the issues contained in the appeals until he was advised of this
23 action.  Foston Decl. ¶¶ 1, 3, 8.

24 ///

---

[10] Plaintiff contends that in 2011, a Jewish C-Status inmate, Loren Holsher, was allowed to attend group services while on C-Status.  He also states that he has personal knowledge that a Muslim prisoner attended group services in the chapel while on C-Status.  Pl.'s Decl. ¶ 2.  Again, Plaintiff's statements do not dispute the contents of DOM Supplement Section 101060.9.1, and in the context of Plaintiff's claims against Defendants, his assertion is not relevant.

[11] Plaintiff argues that Defendant Foston *did* read, review and respond to both appeals.  Plaintiff has not set forth any indication that he has personal knowledge of what Defendant Foston did or did not read.  Plaintiff also cites Defendant Foston's answers to written discovery, but Defendant Foston specifically *denied* reading, reviewing or responding to the appeals in his responses.  ECF No. 153, at 128-129.

8

## IV. DISCUSSION

### A. Liability Against Those Who Review Appeals

Plaintiff's claims against Defendants Pimentel, Van Leer and Foston are based solely on their alleged role in reviewing Plaintiff's appeals at the Third Level.

It is well settled that liability under Section 1983 is based on personal participation in the violation at issue. *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009). A supervisor may be held liable if he "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr v. Baca*, 652 F.3d 1202, 1205-08 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).

Generally, denying a prisoner's administrative appeal does not cause or contribute to the underlying violation. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (quotation marks omitted). While there are limited circumstances where reviewing an appeal may lead to liability, such liability remains based on personal participation. In other words, personal participation in the alleged violation is required, meaning that Defendants, in their role as Third Level reviewers, must have known of the violations and failed to act. "[T]he 'requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" *Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-744 (9th Cir. 1978)).

### B. Analysis

Given the context in which Plaintiff attempts to establish liability against Defendants, and the undisputed facts, the Court need not determine whether an underlying violation occurred in the first instance.[12] Rather, the analysis turns solely on Defendants' review of the appeals at issue.

---

[12] Of course, if there is no underlying First Amendment violation, there can be no liability against Defendants for their role in reviewing the appeals. Indeed, in the Findings and Recommendations issued on the PVSP Defendants' motion for summary judgment, the Court found that Plaintiff's ability to practice his religion was not substantially burdened, though it did so after an examination of the *Turner* factors. *Turner v. Safley*, 482 U.S. 78, 89 (1987). The parties did not present the same evidence in this motion so as to allow the Court to make a similar finding. Defendants here question the sincerity of Plaintiff's religious beliefs, but the Court will not undertake such an analysis. *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (the plaintiff need not show that the religious practice at issue is required as a central tenet of the religion, only that he believes that the practice is consistent with his faith). Nonetheless, the issues can be decided solely on the basis of Defendants' appeal review.

9

1          Here, the undisputed facts before the Court demonstrate that Defendants did not personally
2 participate in, and were not causally connected to, any violation of Plaintiff's First Amendment
3 rights.

4             a.       *Defendant Van Leer*

5          It is undisputed that Plaintiff did not attend chapel on various occasions because staff did not
6 arrive to unlock the chapel. Plaintiff filed an appeal, and Defendant Van Leer reviewed the
7 documentation provided with the appeal at the Third Level. He reviewed the responses at the First
8 and Second Level, both of which advised Plaintiff that unsupervised chapel access was not
9 permitted, but that he was free to gather on the yard for religious services when the chapel was not
10 available. The Second Level decision also indicated that Plaintiff's complaints were vague, and he
11 had not provided specific dates on which he was denied access.

12         Defendant Van Leer reviewed these decisions and determined that PVSP appeared to have
13 complied with the applicable provisions. Indeed, the undisputed facts demonstrate that Defendant
14 Van Leer would have had no reason to believe that Plaintiff's constitutional rights had been violated.
15 Pursuant to section 3720 of Title 15 of the California Code of Regulations, cited by Defendant Van
16 Leer in the Third Level decision, inmates are not permitted unsupervised access to the chapel.
17 Defendant Van Leer also knew that in the absence of supervision, Plaintiff was correctly told that he
18 could gather on the yard for religious practice.

19         Defendant Van Leer is therefore entitled to summary judgment, as the undisputed facts show
20 that he had no reason to think that a constitutional violation had occurred, negating any finding of
21 personal participation. *See Revis v. Syerson*, 2015 WL 641629, at *5 (E.D.Cal. 2015); *Hernandez v.*
22 *Cate*, 918 F.Supp.2d 987, 1018 (C.D.Cal.2013) ("Plaintiff cannot state a [§] 1983 claim based solely
23 on [defendants'] role in the inmate appeals process."); *Lamon v. Junious*, 2009 WL 3248173, at *4
24 (E.D.Cal. 2009) ("[T]he involvement of prison personnel in reviewing and issuing decisions on
25 Plaintiff's inmate appeals does not provide a basis for the imposition of liability on them for the
26 conduct of others."); *see also Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir.2014). (en banc)
27 (affirming directed verdict for Chief Medical Officer that signed a second level response because
28

plaintiff's case "rest[ed] entirely on this signature" and "the fact that [defendant] signed the form doesn't mean that he knew about [plaintiff's] complaints").

### b. *Defendant Pimentel*

It is undisputed that Plaintiff was not permitted to access the chapel while on C-Status. Plaintiff filed an appeal, and Defendant Pimentel reviewed the documentation provided with the appeal at the Third Level. Defendant Pimentel noted that the appeal was bypassed at the First Level, and he reviewed the response at the Second Level. The Second Level response advised Plaintiff that DOM Supplement Section 101060.9.1 provided that inmates on C-Status are not authorized to attend religious functions except during their yard access hours, Monday through Friday. The Second Level response also informed Plaintiff that inmates could request the services of a religious leader for religious consultation outside of authorized program times.

Defendant Pimentel therefore determined that PVSP appeared to have complied with the applicable provisions. As with Defendant Van Leer, the undisputed facts demonstrate that Defendant Pimentel would have had no reason to believe that Plaintiff's constitutional rights had been violated. Plaintiff was on C-Status and, as Defendant Pimentel explained in the Third Level response, his access to programs was limited because of his status. Defendant Pimentel knew that regulations and the PVSP DOM permit C-Status prisoners to attend chapel only if the chapel times overlap with their yard times, and he explained this to Plaintiff. Defendant Pimentel also correctly advised Plaintiff that his C-Status was temporary, and that could contact his religious advisor to request services.

Defendant Pimentel is therefore entitled to summary judgment, as the undisputed facts show that he had no reason to think that a constitutional violation had occurred, negating any finding of personal participation. *See Revis*, 2015 WL 641629, at *5; *Hernandez*, 918 F.Supp.2d at 1018; *Lamon*, 2009 WL 3248173, at *4; *see also Peralta*, 744 F.3d at 1086.

### c. *Defendant Foston*

There is no dispute that Defendant Foston did not read, review or respond to either of Plaintiff's appeals referenced above. Although the signature block on each Third Level decision referenced Defendant Foston, the actual signatures endorsing the decisions were not Defendant

11

Foston's signatures. He was therefore unaware of Plaintiff's appeals, and had no involvement or knowledge of the issues contained in the appeals until he was advised of this action.

This negates any finding of personal involvement, and Defendant Foston is entitled to summary judgment. *See eg. Hanna v. Chudy*, 2014 WL 4629064, at * 7 (N.D. Cal. 2014); *Retanan v. CDCR*, 2012 WL 1833888, at *4 (E.D.Cal. 2013) (a decision by a defendant's designee provides no basis for a claim as § 1983 does not permit respondeat superior liability).

C. Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), and protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In resolving a claim of qualified immunity, courts must determine whether, taken in the light most favorable to the plaintiff, the defendant's conduct violated a constitutional right, and if so, whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009). While often beneficial to address in that order, courts have discretion to address the two-step inquiry in the order they deem most suitable under the circumstances. *Pearson*, 555 U.S. at 236, 129 S.Ct. at 818 (overruling holding in *Saucier* that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); *Mueller*, 576 F.3d at 993-94.

As the Court has found that no constitutional violation occurred in the first instance, it will not further address qualified immunity.

///

///

///

## V.  FINDINGS AND RECOMMENDATIONS

Based on the foregoing, the Court HEREY RECOMMENDS that the motion for summary judgment filed by Defendants Foston, Pimentel and Van Leer be GRANTED, and that judgment be entered in their favor.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court.  Local Rule 304(b).  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections must be filed within fourteen (14) days from the date of service of the objections.  Local Rule 304(d).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **April 27, 2016**                                **/s/ Sandra M. Snyder**
                                                                           UNITED STATES MAGISTRATE JUDGE